1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JERRY BUNYARD,                              No.  2:15-cv-01790 WBS AC DP

12                    Petitioner,                DEATH PENALTY CASE

13           v.

14   RON DAVIS, Warden,                          FINDINGS AND RECOMMENDATIONS

15                    Respondent.

16

17          On December 6, 2017, the court held a hearing on respondent's motion to dismiss (ECF

18   No. 45) and petitioner's motion to stay (ECF No. 51).  Appointed counsel Saor E. Stetler and

19   Richard G. Novak appeared on behalf of petitioner.  Deputy Attorney General Robert C. Nash

20   appeared for respondent.  Having considered the briefing of the parties, the arguments presented

21   at hearing, and the record of this case as a whole, the court finds as follows.

22       I.       Background and Procedural History

23          Petitioner was initially sentenced to death in 1981 following his conviction of first-degree

24   murder with special circumstances.  On appeal, the California Supreme Court affirmed the

25   conviction but reversed the death sentence on grounds of instructional error.  People v. Bunyard,

26   45 Cal. 3d 1139 (1988).  Petitioner was sentenced to death a second time following penalty

27   retrial, and the California Supreme Court affirmed the result on February 23, 2009.  People v.

28   Bunyard, 45 Cal. 4th 836 (2009).

                                                 1

A state petition for writ of habeas corpus was filed on October 9, 2007. The California Supreme Court denied the petition on June 24, 2015. In re Bunyard, No. S157098, 2015 Cal. LEXIS 4615 (June 24, 2015).

Proceedings in this court commenced on August 24, 2015, and counsel were appointed on August 31, 2015. After being granted prospective equitable tolling of sixty-eight days (ECF Nos. 33, 38), petitioner filed a 43-claim petition for writ of habeas corpus on August 31, 2016. ECF No. 44.

On July 6, 2017, respondent filed a motion to dismiss the petition on grounds it contains both exhausted and unexhausted claims. ECF No. 45. Respondent identified 23 claims as unexhausted. Id.[1] On August 23, 2017, petitioner filed a habeas petition in the California Supreme Court containing the claims that respondent had identified in this court as unexhausted. ECF No. 51-2. In light of the pendency of the state exhaustion petition, petitioner seeks a stay and abeyance of federal proceedings pursuant to Rhines v. Weber, 544 U.S. 269 (1995). ECF No. 51.

II.     Governing Legal Principles

Habeas petitioners are required to exhaust state remedies before seeking relief in federal court. 28 U.S.C. § 2254(b). The exhaustion doctrine ensures that state courts will have a meaningful opportunity to consider allegations of constitutional violation without interference from the federal judiciary. Rose v. Lundy, 455 U.S. 509, 515 (1982). Exhaustion requires fair presentation of the substance of a federal claim to the state courts. Picard v. Connor, 404 U.S.

---

[1] Respondent contends that the following claims are unexhausted because, although the asserted errors were raised previously in state court, the present (federal constitutional) legal basis was not fairly presented to the state court: Claims 1, 2, 3, 5, 6, 7, 8, 10, 14, 16, 22. Respondent contends that the following claims are unexhausted because, although raised previously in state court, they were exhausted in a different context and not as freestanding claims for relief: Claims 4, 12, 14 and 33. Respondent contends that the following claims are unexhausted because, although they were presented in a different form in state court, expanded factual allegations render them unexhausted as pled in the federal petition: Claims 30, 33, 37, 39, 42. Respondent contends that the following claims are unexhausted because they were not presented at all to the California Supreme Court: Claims 35, 36, 40. Respondent also contends that Claim 38 (petitioner is ineligible for death sentence due to his mental impairments) is non-cognizable because state remedies remain available.

270, 276, 278 (1971). In order to exhaust state remedies, a federal claim must be presented to the State's highest court. Castille v. Peoples, 489 U.S. 346 (1989).

Federal district courts may not adjudicate petitions for habeas corpus which contain both exhausted and unexhausted claims. Rose, 455 U.S. at 518-19. However, that does not mean that a mixed petition must be dismissed. After the enactment of the AEDPA and its creation of a one-year statute of limitations for filing federal habeas petitions in 1996, the Supreme Court recognized the procedural trap that is created by the total exhaustion rule. "As a result of the interplay between AEDPA's 1-year statute of limitations and Lundy's dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." Rhines, 544 U.S. at 275. To prevent that outcome in appropriate cases, the Court held that a federal petition containing both exhausted and unexhausted claims may be stayed if (1) petitioner demonstrates good cause for the failure to have first exhausted the claim(s) in state court, (2) the claim or claims at issue potentially have merit, and (3) petitioner has not been dilatory in pursuing the litigation. Rhines, 544 U.S. at 277-78.

Because the Supreme Court emphasized that district courts should stay mixed petitions only in "limited circumstances," Rhines, 544 U.S. at 277, the Ninth Circuit has rejected a "broad interpretation of 'good cause.'" Wooten v. Kirkland, 540 F.3d 1019, 1024 (9th Cir. 2008), cert. denied, 556 U.S. 1285 (2009). However, the Rhines "good cause" standard does not require a showing of extraordinary circumstances. Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005). "The good cause element is the equitable component of the Rhines test. It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court. As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure." Blake v. Baker, 745 F.3d 977, 982 (9th Cir. 2014). Accordingly, good cause is not shown where the petitioner created the condition that led to the failure to exhaust. See Wooten, 540 F.3d at 1024.

III.     Petitioner's Motion for Stay and Abeyance

The court first considers petitioner's motion, because if a stay is appropriate it will be

unnecessary to resolve the parties' disputes about which claims are presently unexhausted. Because it is undisputed that the petition is mixed, a showing of good cause for a stay to permit exhaustion of any unexhausted claim will support a stay of these proceedings as a whole.  See Dixon v. Baker, 847 F.3d 714, 722 (9th Cir. 2017) (to satisfy Rhines, petitioner must establish that at least one unexhausted claim is not plainly meritless).

A.  Petitioner Has Satisfied the *Rhines* Criteria Regarding Claim 35

Claim 35 alleges that petitioner' constitutional rights have been violated by California's system of appointing private post-conviction counsel, and provision of funding and resources to private counsel that are both objectively inadequate and disparate in comparison to the resources available to death-sentenced inmates represented by public agencies.  ECF No. 44 at 370-72. Petitioner acknowledges that this claim was not exhausted prior to commencement of the federal habeas action; it is included in the exhaustion petition now pending in the California Supreme Court.

1.  Petitioner Has Demonstrated Good Cause for His Previous Failure to Exhaust

"Good cause" under Rhines is a lesser standard than "extraordinary circumstances." Jackson, 425 F.3d at 662.  A "reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust," will demonstrate good cause.  Blake, 745 F.3d at 982.  Petitioner has satisfied this standard.

Petitioner first makes the common-sense argument that this claim could not have been included in his first state habeas petition because it did not arise until conclusion of that proceeding.  That is quite correct.  The alleged violation did not occur, or was not complete, until the California Supreme Court summarily denied the first state petition and, with it, petitioner's previously unadjudicated request for additional funding.  Although the existence of a potential claim based on systemic habeas funding disparities may have been apparent earlier, that claim was not ripe and could not have been presented in the fully-developed form required for exhaustion until petitioner was denied resources and experienced the consequences of California's system of post-conviction appointments and funding.

Moreover, Claim 35 encompasses the state capital appellate process as well as state

habeas. Petitioner could not have included claims challenging the appellate process in his first state habeas petition, because the habeas petition was due before the appeal had concluded. California requires the habeas petition to be filed within 180 days of the reply brief on direct appeal. Rule 1-1.1, Supreme Court Policies Regarding Cases Arising from Judgments of Death. Petitioner's state habeas petition was timely filed in 2007, before the direct appeal had been argued or decided.

Petitioner also argues persuasively that California does not provide a process by which to address the issues raised in Claim 35, and that the informal process which is available is ineffective. Petitioner has identified the attempts he made to raise the funding issue, which were ignored by the California Supreme Court. See ECF No. 49 at 30-31. To the extent that California process was unclear regarding the proper avenue for relief, petitioner had good cause for his failure to exhaust. Cf. Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005) (noting that a petitioner who pursues state remedies in good faith where availability of remedy is unclear will have established cause for a stay under Rhines).

On the other hand, to the extent that petitioner's previous counsel might have but failed to raise the issue, that failure independently constitutes good cause. See Blake, 745 F.3d at 983 (ineffective assistance of post-conviction counsel constitutes good cause under Rhines). Numerous district courts have found cause under Rhines based on allegations that state post-conviction counsel performed deficiently in failing to identify or develop claims. See Riner v. Crawford, 415 F. Supp. 2d 1207, 1210-11 (D. Nev. 2006) (collecting cases). Claim 42 of the federal petition (which respondent also contends is unexhausted, and which is also now pending in state court) alleges the ineffective assistance of former state habeas counsel in failing to fully develop and present all claims. ECF No. 44 at 434-36. The allegations of Claim 42 are sufficient to establish cause for failure to exhaust Claim 35.

### 2. The Claim Is Not "Plainly Meritless"

The merit inquiry under Rhines turns on whether petitioner has presented a colorable claim, not whether he is likely to prevail. See Gonzalez v. Wong, 667 F.3d 965, 980 (9th Cir. 2011). This standard is satisfied where the claim is not "plainly meritless." Dixon, 847 F.3d at

720.  In an analogous context, the Ninth Circuit has stated that a habeas claim is not "plainly meritless" unless "it is perfectly clear that the petitioner has no hope of prevailing."  Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).  The appellate court has expressly adopted this formulation in the Rhines context.  Dixon, 847 F.3d at 722.  Respondent's argument on the merits of Claim 35, ECF No. 54 at 8-9, raises questions about the merits of the claim but does not demonstrate that it is "plainly meritless."  To the contrary, the existence of serious questions going to the merits indicates that litigation is required and should not be foreclosed.

Respondent contends summarily that Claim 35 is not cognizable because it involves a state procedural issue that cannot provide a basis for federal habeas relief.  Id.  This theory begs many extremely complicated legal issues that plague both the state's death penalty apparatus itself and federal review of those issues.  California's system for capital post-conviction litigation has been widely, and for a great many years now, decried as broken.  See Arthur L. Alarcón & Paula M. Mitchell, Executing the Will of the Voters?: A Roadmap to Mend or End the California Legislature's Multi-Billion-Dollar Death Penalty Debacle, 44 Loy. L.A. L. Rev. S41, S61 (2011) (describing California's "broken" death penalty system); California Commission on the Fair Administration of Justice, Report and Recommendations on the Administration of the Death Penalty in California ("Commission Report") (2008) at 114 (declaring California's death penalty system to be "dysfunctional"); Ronald M. George, Reform Death Penalty Appeals, L.A. Times, Jan. 7, 2008 (describing California process of post-conviction review as "dysfunctional").[2]

The constitutional questions presented by this state of affairs are extremely serious.  See, generally, Jones v. Chappell, 31 F. Supp. 3d 1050, 1057-1058 (C.D. Cal. 2014) (broadly declaring California's death penalty system unconstitutional), overruled by Jones v. Davis, 806 F.3d 538 (9th Cir. 2015).[3]  The appointment of private counsel and related funding limitations, which form the basis for petitioner's Claim 35, have been recognized as integral to the inability of the state system to provide adequate review.  See Jones, 31 F. Supp. 3d at 1057-1058 (describing two-

---

[2]  The author is the former Chief Justice of the California Supreme Court.

[3]  The claim at issue in Jones addressed a different aspect of the state post-conviction review process than Mr. Bunyard's Claim 35, so the Ninth Circuit's ultimate rejection of the Jones claim cannot be dispositive of the matter before this court.

tiered system of public agency and private appointments, and funding problems facing private

appointed counsel in California death penalty cases, as contributing factors to systemic and

excessive delay in state post-conviction review); see also Arthur L. Alarcón, Remedies for

California's Death Row Deadlock, 80 S. Cal. L. Rev. 697, 738 (2007) (addressing appointment

procedures and underfunding issues as factors contributing to systemic dysfunction in capital

post-conviction process); Commission Report at 135 (describing the below-market rates at which

appointed habeas counsel are paid, and the low cap on funds made available to conduct habeas

investigations and retain necessary experts).

Whether petitioner can successfully establish a violation of the Constitution, and the

availability of federal habeas relief, are questions for another day. At this stage, the undersigned

cannot conclude that the claim is plainly meritless. The "cognizability" argument that respondent

raises in a single paragraph, relying on general principles, would itself require extensive briefing

to adjudicate. Nothing in Rhines requires such resolution of complicated merits-related questions

at this stage. To the contrary, where a claim has arguable merit a stay should issue so that the

state may address the claim substantively and then, if state relief is denied, this court can tackle

the many thorny issues presented. See Gonzalez, supra.

3. <u>Petitioner Has Not Been Dilatory</u>

Petitioner brought this claim reasonably promptly upon conclusion of state habeas

proceedings. The time taken by newly-appointed federal habeas counsel to identify claims,

develop evidence, and prepare the federal petition – including previously unexhausted claims –

was well within the norm. In granting a brief period of equitable tolling, this court previously

determined that petitioner had diligently pursued his federal rights through the filing of the

federal petition. ECF Nos. 33 (Findings and Recommendations) at 4-5, 38 (Order adopting

Findings and Recommendations).

Moreover, contrary to respondent's argument, it was entirely reasonable for petitioner's

counsel to wait until respondent made a record of its position on non-exhaustion to file the

anticipated exhaustion petition in the California Supreme Court. See Kennedy v. Warden, No.

2:13-cv-2041 KJM KJN DP, 2015 WL 6502285, 2015 U.S. Dist. LEXIS 145777 (E.D. Cal. Oct.

7

27, 2015) (reasonable for petitioner to wait until unexhausted claims were identified by federal court before filing state exhaustion petition), adopted in full, 2016 WL 1573118, 2016 U.S. Dist. LEXIS 52439 (Apr. 19, 2016).  California's law of habeas procedure, like federal habeas law, disfavors where it does not outright ban the piecemeal submission of claims.  See In re Clark, 5 Cal. 4th 750 (1993).  Accordingly, it was incumbent upon petitioner to not submit an exhaustion petition until he learned what universe of claims required further exhaustion (at least in respondent's view).

The once-common prophylactic tactic of submitting the entire federal habeas petition to the California Supreme Court at the time of federal filing may have had the advantage of generating a prompt filing date for the exhaustion petition, but the California Supreme Court has long since put an end to the practice.  See In re Reno, 55 Cal. 4th 428, 443 (2012) (presentation in state court of exhaustion petition identical to the "mixed" federal petition constitutes abuse of the writ).  Accordingly, federal habeas counsel cannot be faulted for failing to take this route.  Given the conflicting demands of state and federal practice, petitioner's "delay" in filing an exhaustion petition cannot be construed as dilatory.

The undersigned further finds that the time between respondent's identification of arguably unexhausted claims in his motion to dismiss, and petitioner's filing of his exhaustion petition in the state court, was reasonable.  Nothing in the record indicates that petitioner has engaged in "intentionally dilatory litigation tactics," Rhines, 544 U.S. at 278, either prior to or after filing of the federal petition.  Accordingly, the undersigned concludes that petitioner acted with diligence sufficient to satisfy the final prong of the Rhines standard as to Claim 35.

B.  Petitioner Has Also Satisfied the *Rhines* Criteria Regarding Claim 33

Although petitioner's stay motion focuses on Claim 35 by way of example, he contends more broadly that resource limitations and the ineffective assistance of state post-conviction counsel establish cause for his failure to exhaust all unexhausted claims; that all such claims have potential merit; and that he has not been dilatory with regard to any newly asserted claims.  ECF No. 51 at 1.  The court agrees that petitioner's showing of cause and lack of dilatory conduct, detailed above, apply generally to the claims and subclaims that have been challenged by

8

respondent as unexhausted. In further support of the recommendation for a stay, the undersigned will briefly explain why Claim 33, which alleges that petitioner was mentally incompetent during trial and throughout appellate and state habeas proceedings (see ECF No. 44 at 309-19), also meets the Rhines standards.

Petitioner's first state habeas petition contained an incompetence claim, but respondent contends that the claim presented to this court is rendered unexhausted by the addition of allegations regarding petitioner's mental state during the entirety of state post-conviction proceedings. ECF No. 45 at 35. As noted above, petitioner was required by state court rules to file his first state habeas petition during the pendency of his direct appeal. Since neither the state appellate process nor the state habeas process had been completed, he could not then have alleged incompetence throughout those proceedings.

Petitioner did assert in state court at the time of filing that he was then incompetent. See ECF No. 25-1 (2007 state petition) at AGO 19746, 19808. This demonstrates that he was not withholding the issue of his competence in order to inject delay by raising it later. However, respondent reasonably argues in the exhaustion context that petitioner's assertions were insufficient to alert the California Supreme Court to a claim that his federal constitutional rights were violated by his incompetence throughout the course of post-conviction proceedings. Such a claim was not ripe until post-conviction proceedings continued and reached a conclusion despite petitioner's continuing incompetence – that is the basis of the claim here. This practical context, particularly in light of the California rule against piecemeal presentation of claims, provides a reasonable explanation for petitioner's failure to previously exhaust. These considerations satisfy the good cause and dilatory tactics prongs of Rhines.

Petitioner's extensive evidentiary showing in support of his incompetence claim demonstrates that the claim is not plainly meritless. See ECF No. 44 at 312-319 and referenced exhibits. Petitioner has submitted expert evaluations, mental health and correctional records, and social history documentation to support his allegations of mental impairment. Id. It is well-established that trial while mentally incompetent violates a defendant's constitutional rights. Pate v. Robinson, 383 U.S. 375 (1966); Drope v. Missouri, 420 U.S. 162, 171 (1975). Petitioner's

showing directly addresses the competence standards articulated by the Supreme Court in Pate and Drope, and thus states a colorable claim.

Whether the ongoing incompetence of a death-sentenced inmate during state post-conviction review provides a further basis for federal habeas relief is a non-frivolous issue.  The Ninth Circuit has observed that while a substantive constitutional claim based on incompetence during post-conviction proceedings is "debatable," it nonetheless raises "substantial" constitutional questions.  See Gates v. Woodford (Rohan ex rel. Gates), 334 F.3d 803, 814 (9th Cir.), cert. denied, 540 U.S. 1069 (2003).  While the U.S. Supreme Court subsequently abrogated Gates in Ryan v. Gonzales, 568 U.S. 57 (2013), its criticism on this point was based on the absence of a constitutional right to counsel in the habeas context.  Gonzales, 568 U.S. at 66-67.[4] The constitutional right to counsel on direct appeal, however, is indisputable.  Evitts v. Lucey, 469 U.S. 387 (1985).  Accordingly, that portion of Claim 33 involving direct review is unaffected by Gonzales.  This court finds that even if "debatable," it presents a substantial question.  To the limited extent the claim involves state habeas review, it presents complicated questions that defy facial categorization as "plainly meritless."[5]

In any case, the question under Rhines is whether the *claim* at issue has potential merit, see Dixon, 847 F.3d at 722, not whether discrete allegations within a claim can independently support federal habeas relief.  Claim 33 is not "plainly meritless" as a whole, and it was previously unexhausted for legitimate reasons rather than because petitioner intentionally delayed.  Accordingly, Rhines is satisfied.

C.  Stay and Abeyance Is Appropriate

The court need not determine whether a Rhines stay is appropriate as to each of the claims now pending in the California Supreme Court.  "One claim requiring a stay acts as an umbrella for all claims."  Horning v. Martel, No. 2:10-cv-1932 JAM GGH DP, 2011 WL 5921662, 2011

[4]  The Ninth Circuit had implied a right to competence from the right to counsel.  Gates, 334 F.3d at 813.  The Supreme Court found this was error where the right to counsel was statutory rather than constitutional.  Gonzales, 568 U.S. at 67.

[5]  Gonzales limited the Ninth Circuit's practice of indefinitely staying federal habeas cases on a showing of incompetence.  Accordingly, it is not directly dispositive of substantive claims for relief based on incompetence during state court proceedings.

U.S. Dist. LEXIS 136725 (E.D. Cal. Jan. 19, 2012) (findings and recommendations), adopted in full 2012 WL 163784, 2012 U.S. Dist. LEXIS 6282 (Jan. 19, 2012). Because petitioner has satisfied <u>Rhines</u> as to at least two claims, the instant proceeding should be stayed and held in abeyance until the California Supreme Court has acted on the exhaustion petition.

This result is consistent with that in several other capital habeas cases now pending in this district, in which stays pending exhaustion have been granted. <u>See</u>, <u>e.g.</u>, <u>Horning</u>, <u>supra</u>; <u>Whalen v. Warden, Cal. State Prison</u>, No. 1:14-cv-1865 LJO SAB DP, 2016 U.S. Dist. LEXIS 52495 (E.D. Cal. Apr. 19, 2016) (finding good cause based on ineffective assistance of counsel and claims that claims were potentially meritorious, including claim that California's death penalty scheme is unconstitutional); <u>Kennedy v. Warden</u>, No. 2:13-cv-2041 KJM KJN DP, 2015 WL 6502285, 2015 U.S. Dist. LEXIS 145777 (E.D. Cal. Oct. 27, 2015) (finding good cause based on ineffective assistance of counsel and California Supreme Court's denial of post-petition request for additional investigative funds, and that it was reasonable for petitioner to wait until unexhausted claims were identified by federal court before filing state exhaustion petition), adopted in full, 2016 WL 1573118, 2016 U.S. Dist. LEXIS 52439 (Apr. 19, 2016); <u>Clark v. Chappell</u>, No. 12-cv-0803 LJO DP, 2013 WL 4500474, 2013 U.S. Dist. LEXIS 119685 (E.D. Cal. Aug. 22, 2013) (finding good cause based on ineffective assistance of counsel); <u>Perry v. Chappell</u>, No. 1:11-cv-1367 AWI DP, 2013 U.S. Dist. LEXIS 100834 (E.D. Cal. July 18, 2013) (finding claims not plainly meritless based on facial examination and good cause based on lack of funding in state court).

IV.    <u>Respondent's Motion to Dismiss</u>

Because a stay pending exhaustion is appropriate for the reasons explained above, respondent's motion to dismiss on exhaustion grounds should be denied as moot. There is no reason for this court to expend the judicial resources necessary to address all 23 of respondent's non-exhaustion arguments (<u>see</u> n. 1, infra), because the California Supreme Court currently has before it all 23 of the disputed claims. Accordingly, all claims in the federal petition will be fully exhausted at the conclusion of the state court's review.

////

## CONCLUSION

For the reasons explained above, IT IS HEREBY RECOMMENDED that petitioner's motion for stay and abeyance (ECF No. 51) be GRANTED, and that respondent's motion to dismiss (ECF No. 45) be DENIED as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within *fourteeen* days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within *seven* days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 19, 2018

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE